IZAAK WALTON LEAGUE OF AMERICA, INC., Cedar Creek Wildlife Project, Inc., Appellants–Petitioners,

v.

DEKALB COUNTY SURVEYOR'S OFFICE, Indiana Department of Natural Resources, Appellees–Respondents.

No. 02A05–0509–CV–539.

Court of Appeals of Indiana.

July 18, 2006.

Rehearing Denied Sept. 11, 2006.

David C. Van Gilder, Van Gilder & Trzynka, P.C., Fort Wayne, IN, Attorney for Appellant.

Derald D. Kruse, Auburn, IN, Attorney for Appellee, DeKalb County Surveyor's Office.

Steve Carter, Attorney General of Indiana, David L. Steiner, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee, Indiana Department of Natural Resources.

## OPINION

BARNES, Judge.

### Case Summary

Izaak Walton League of America, Inc. ("Walton") and Cedar Creek Wildlife Project, Inc. ("Cedar Creek") appeal the trial court's dismissal of their petition for judicial review of a decision by the Natural Resources Commission ("NRC"). We reverse and remand.

### Issue

Walton and Cedar Creek raise several issues, which we combine and restate as whether the trial court properly concluded that it lacked subject matter jurisdiction to consider their petition for judicial review.

### Facts

On September 12, 2001, the Department of Natural Resources ("DNR") issued a permit to the DeKalb County Surveyor's Office ("DeKalb County") to remove two logjams from Cedar Creek in DeKalb County. On October 5, 2001, Walton, Cedar Creek, and four individuals filed with the NRC a petition for administrative review and stay of the DNR permit to DeKalb County. DNR and DeKalb County moved for summary judgment on the question of whether the parties had standing and whether the permit was issued in accordance with statutory and regulatory guidelines. On May 24, 2002, an administrative law judge ("ALJ") entered an "Amended Interlocutory Order" on the summary judgment motions and held that all but one of the petitioners had standing. It also concluded as a matter of law that DNR had properly considered and analyzed one portion of the statute governing the permit at issue, but that there remained a question of fact as to whether DNR had complied with a separate subsection of the statute. Specifically, the ALJ believed there was a question of fact regarding whether DNR had properly considered the "cumulative effects" of granting the logjam removal permit, as is required by Indiana Code Section 14–28–1–22(f).

The ALJ set the matter for an evidentiary hearing. While the case was pending, the logjams were removed from Cedar Creek pursuant to the permit. DNR and DeKalb County moved to dismiss, alleging the petition challenging the permit now was moot. On September 24, 2002, the ALJ issued an order denying the motion to dismiss, considering the issue before the NRC to be "of great public importance and ... likely to recur...." App. p. 39. On July 23, 2003, the ALJ conducted an evidentiary hearing on the "cumulative effects" question. On October 10, 2003, the ALJ entered preliminary findings of fact and conclusions thereon. Relating evidence received during the evidentiary hearing, the ALJ determined DNR, in part, had not fully considered the "cumulative effects" of the granting of the permit as required by statute and an accompanying regulation defining the phrase "cumulative effects." The permit was to be remanded to the DNR to "determine the impacts which result from the incremental impact of the Permit action when added to other past and present actions," as required by law, and to document its determinations in writing. *Id.* at 43.

On May 3, 2004, a committee of the NRC adopted as a final order the ALJ's findings and conclusions in their entirety, with the exception of two minor corrections. On June 2, 2004, Walton and Cedar Creek filed a verified petition for judicial review of the NRC's final order. The specific allegation of error in the petition was as follows:

> Petitioners have been prejudiced by the Final Order because that Order is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Specifically, the Natural Resources

Commission remanded the permit back to the agency, finding that the DNR failed to determine the cumulative effects of the permit issuance, yet the NRC failed to invalidate the permit. In effect, the NRC found that the agency did not follow the statutory requirement for issuance of a permit for construction in a floodway, but its order does nothing to remedy the unlawfully issued permit. App. p. 30.

Walton and Cedar Creek requested preparation of an agency record from NRC. The request specified, among other things, a transcript of the July 23, 2003 hearing before the ALJ, along with all exhibits offered at the hearing, a copy of the 2002 "Amended Interlocutory Order," and the NRC's final order and accompanying findings and conclusions. After receiving extensions of time to file the agency record, Walton and Cedar Creek filed it on November 10, 2004. The record contained only the items specifically requested by Walton and Cedar Creek.

On May 16, 2005, DNR filed a brief on the merits of Walton and Cedar Creek's petition for judicial review. On that same date, it also filed a "Motion to Accept Additional Documents from the Administrative Record." *Id.* at 397. The motion claimed Walton and Cedar Creek had failed to request inclusion of certain statutorily-required documents in the NRC record. The motion concluded:

> The failure to provide the entire administrative record is a jurisdictional defect which renders this Court without jurisdiction over this case.... Wherefore, in the event that this Court should continue to hear this case in spite of the jurisdictional defect, the Department requests that this Court accept the attached Supplemental Record of additional documents from the administrative record in this cause, records which

should have been on file before any exercise of jurisdiction by this Court. *Id.* at 398. Walton and Cedar Creek responded to this motion by advising the trial court "that they have no objection to the Department's motion to supplement the record, and further, request that this Court determine that the Department's Motion does not seek dismissal on the basis of an alleged jurisdictional defect." *Id.* at 476.

On June 28, 2005, the trial court conducted a hearing to address the jurisdictional question raised by DNR. On July 1, 2005, the trial court dismissed the petition for judicial review, concluding that the agency record filed by Walton and Cedar Creek was inadequate "and that this failure results in this Court lacking subject matter jurisdiction over the issue at hand." *Id.* at 10. Walton and Cedar Creek filed a motion to correct error, which the trial court denied on August 16, 2005. Walton and Cedar Creek now appeal.

### Analysis

Walton and Cedar Creek assert that the record from the NRC it submitted on November 10, 2004, was sufficient to confer jurisdiction on the trial court to consider the issue raised in their petition for judicial review. DNR and DeKalb claim that that record was insufficient, thus depriving the trial court of subject matter jurisdiction in this case and requiring the order of dismissal.

■ At the outset, we acknowledge Walton and Cedar Creek's contention that the trial court erred in treating DNR's "Motion to Accept Additional Documents from the Administrative Record" as a motion to dismiss. *Id.* at 397. As Walton and Cedar Creek observe, that motion did not explicitly request dismissal of the petition for judicial review. Regardless, Indiana Code Section 4–21.5–5–13(b) expressly permits a trial court to dismiss a

petition for judicial review "on its own motion" if it determines that the agency record submitted by the petitioner is untimely or inadequate. That the trial court proceeded to dismiss Walton and Cedar Creek's petition for judicial review without an express motion to that effect from either DNR or DeKalb County is not grounds for reversing the dismissal.

We also note that most of DNR's brief is dedicated to criticizing our recent decision in *Indiana State Board of Health Facility Administrators v. Werner*, 841 N.E.2d 1196 (Ind.Ct.App.2006), *aff'd on rehearing*, 846 N.E.2d 669 (Ind.Ct.App. 2006). In that case, we were required to address directly whether a party's failure to timely file an administrative record under Indiana Code Section 4–21.5–5–13 deprives a trial court of subject matter jurisdiction over a petition for judicial review or merely impacts jurisdiction over the particular case. After acknowledging that some cases had referred to the timely filing of an administrative record as impacting subject matter jurisdiction, we noted that in none of those cases was it necessary to determine what kind of jurisdiction was at issue. *Werner*, 841 N.E.2d at 1204. In *Werner*, unlike in the previous cases, the administrative agency was claiming for the first time on appeal that the record had not been timely filed, and we were forced to determine whether such an argument could be waived because it only concerned jurisdiction over the particular case, not subject matter jurisdiction. After a thorough review of those cases and others in our original opinion and opinion on rehearing, we concluded that the requirement of timely filing the agency record at most affected a trial court's jurisdiction over the particular case, not subject matter jurisdiction. *Id.* at 1205–06. Thus, any complaint that the agency record is inadequate or not timely filed can be waived if not objected to at the earliest opportunity. *Id.*

We still believe, despite the State's repeated efforts to convince us otherwise, that *Werner* was decided correctly. We need not rehash the specifics of that case. In fact, we observe that our supreme court very recently discussed Indiana Code Section 4–21.5–5–13, which is now applicable to the Indiana Tax Court, and plainly stated: "The timing of filing the agency record implicates neither the subject matter jurisdiction of the Tax Court nor personal jurisdiction over the parties. Rather, it is jurisdictional only in the sense that it is a statutory prerequisite to the docketing of an appeal in the Tax Court." *Wayne County Prop. Tax Assessment Bd. of Appeals v. United Ancient Order of Druids–Grove # 29*, 847 N.E.2d 924, 926 (Ind. 2006). This is consistent with our holding in *Werner*.

Additionally, unlike in *Werner*, in this case the petition for judicial review in fact was dismissed upon DNR's suggestion before the trial court that it lacked jurisdiction. To the extent DNR in a footnote in its brief also argues that the trial court here lacked jurisdiction because Walton and Cedar Creek did not originally seek an extension of time to file the agency record until after thirty days had passed after the filing of the petition for judicial review, that argument is waived for the same reasons outlined in *Werner*. DNR never raised such an argument before the trial court, and it is waived for not being made at the earliest opportunity. See *Werner*, 841 N.E.2d at 1206. Regardless of whether the agency record was timely filed in this case, the trial court had subject matter jurisdiction to consider a petition for judicial review challenging a final agency decision.

The *Wayne County* opinion also addresses the proper standard of review for rulings on motions to dismiss a petition for judicial review on jurisdictional

grounds. The standard depends on whether the trial court resolved disputed facts, and if so, whether the trial court conducted an evidentiary hearing or ruled on a paper record. *Wayne County,* 847 N.E.2d at 926. If the facts are not in dispute or the trial court rules on a paper record, we review de novo a ruling on a motion to dismiss for lack of jurisdiction. *Id.* The trial court's ruling here was based entirely on a paper record. Therefore, we review its dismissal of Walton and Cedar Creek's petition de novo. See *Id.*

We now turn to the heart of this matter: whether the agency record that Walton and Cedar Creek filed on November 10, 2004, constituted an adequate record for purposes of a petition for judicial review of agency action. In order to answer this question, it is imperative to examine precisely what agency action Walton and Cedar Creek had asked the trial court to review. Walton and Cedar Creek filed a challenge to the DNR permit granted to DeKalb County to clear two logjams from Cedar Creek, alleging that the permit was not granted in accordance with Indiana Code Section 14–28–1–22 governing excavations in floodways. The ALJ granted partial summary judgment in favor of DNR and DeKalb County on the question of whether the permit was issued in compliance with subsection (e) of Section 14–28–1–22.[1] The ALJ concluded, however, that a genuine issue of material fact precluded summary judgment to DNR and DeKalb County on the question of whether the permit was issued in compliance with subsection (f) of the same statute, namely whether the DNR considered "the cumulative effects of the structure, obstruction, deposit, or excavation" before issuing the permit. Ind.Code § 14–28–1–22(f).

The hearing conducted by the ALJ on July 23, 2003, was directed specifically and only to this narrow issue. At that time, the parties presented testimony and entered exhibits into evidence on that issue. The ALJ later entered findings and conclusions regarding the "cumulative effects" issue that appears to have relied exclusively upon testimony and evidence presented at that hearing. The NRC subsequently adopted these findings and conclusions almost in their entirety as its final order.[2]

Walton and Cedar Creek's petition for judicial review expressly states that it is challenging the NRC's determinations and remedy concerning the "cumulative effects" issue. To that end, Walton and Cedar Creek requested from the NRC and filed with the trial court as the agency record in this case the transcript of the hearing held on July 23, 2003, all exhibits offered at that hearing, the ALJ's findings and conclusions, the parties' objections and responses to objections to the ALJ's findings and conclusions, and the NRC's adoption of those findings and conclusions. We conclude this was sufficient to give the trial court jurisdiction over this particular case.

---

1. This subsection provides:

   An applicant must receive a permit from the director for the work before beginning construction. The director shall issue a permit only if in the opinion of the director the applicant has clearly proven that the structure, obstruction, deposit, or excavation will not do any of the following:
   (1) Adversely affect the efficiency of or unduly restrict the capacity of the floodway.
   (2) Constitute an unreasonable hazard to the safety of life or property.

   (3) Result in unreasonably detrimental effects upon fish, wildlife, or botanical resources.
   Ind.Code § 14–28–1–22(e).

2. The ALJ's findings and the NRC's final order do expressly incorporate the earlier findings and conclusions on the summary judgment ruling; the findings and conclusions related to the July 2003 hearing are clearly separated from the summary judgment findings and conclusions and placed under a heading entitled "Hearing." App. p. 38.

Indiana Code Section 4–21.5–5–13 states in part:

(a) Within thirty (30) days after the filing of [a petition for judicial review of agency action], or within further time allowed by the court or by other law, the petitioner shall transmit to the court the original or a certified copy of the agency record for judicial review of the agency action, consisting of:

(1) any agency documents expressing the agency action;

(2) other documents identified by the agency as having been considered by it before its action and used as a basis for its action; and

(3) any other material described in this article as the agency record for the type of agency action at issue, subject to this section.

(b) An extension of time in which to file the record shall be granted by the court for good cause shown. Inability to obtain the record from the responsible agency within the time permitted by this section is good cause. Failure to file the record within the time permitted by this subsection, including any extension period ordered by the court, is cause for dismissal of the petition for review by the court, on its own motion, or on petition of any party of record to the proceeding.

The parties agree that "any other material described in this article as the agency record for the type of agency action at issue" is controlled by Indiana Code Section 4–21.5–3–33(b), which governs administrative adjudicative proceedings and states:

The agency record of the proceeding consists only of the following:

(1) Notices of all proceedings.

(2) Any prehearing order.

(3) Any motions, pleadings, briefs, petitions, requests, and intermediate rulings.

(4) Evidence received or considered.

(5) A statement of matters officially noticed.

(6) Proffers of proof and objections and rulings on them.

(7) Proposed findings, requested orders, and exceptions.

(8) The record prepared for the administrative law judge or for the ultimate authority or its designee under sections 28 through 31 of this chapter, at a hearing, and any transcript of the record considered before final disposition of the proceeding.

(9) Any final order, nonfinal order, or order on rehearing.

(10) Staff memoranda or data submitted to the administrative law judge or a person presiding in a proceeding under sections 28 through 31 of this chapter.

(11) Matters placed on the record after an ex parte communication.

Additionally, subsection (c) of Section 4–21.5–3–33 states, "Except to the extent that a statute provides otherwise, the agency record described by subsection (b) constitutes the exclusive basis for agency action in proceedings under this chapter and for judicial review of a proceeding under this chapter."

■ In addressing whether the agency record submitted by Walton and Cedar Creek sufficiently complied with Indiana Code Sections 4–21.5–5–13(a) and 4–21.5–3–33(b), we are guided by the following principles of statutory interpretation. "When interpreting a statute, the express language of the statute controls the interpretation and the rules of statutory construction apply." *Bushong v. Williamson*, 790 N.E.2d 467, 471 (Ind.2003). We must determine, give effect to, and implement the legislative intent underlying the statute and construe it in such a way as to

prevent absurdity and hardship and to favor public convenience. *Id.* Because statutes are examined as a whole, it is often necessary to avoid excessive reliance on a strict literal meaning of the words or phrases in the statute. *State v. Dugan,* 793 N.E.2d 1034, 1038 (Ind.2003). We must consider the objects and purposes of the statute as well as the effects and repercussions of such an interpretation. *Id.*

We think the purposes of the statutes governing what constitutes an adequate agency record for purposes of a petition for judicial review are clear. The record must include all that is necessary in order for the reviewing court to accurately assess the challenged agency action. The parties, including the agency and the party challenging an agency decision, may not attempt to limit the record presented to the reviewing court only to materials and evidence that support their position. Conversely, the parties cannot attempt to include in the record materials and evidence that supports their position but that was not previously introduced during the challenged agency proceeding. The importance of the statutes is that no relevant evidence or materials are hidden, and no "new" or "secret" evidence is introduced to either contradict or support an agency decision. This is consistent with Indiana Code Section 4–21.5–3–27(d), which states in part, "Findings must be based exclusively upon the evidence of record in the proceeding and on matters officially noticed in that proceeding." It also is consistent with Indiana Code Section 4–21.5–5–11, which generally prohibits trial courts considering a petition for judicial review from reviewing materials outside of the agency record and from trying the cause de novo.

We do not believe the purpose of the statutes is to require inclusion of irrelevant and/or superfluous documents or materials as part of the agency record for purposes of judicial review. We also do not believe that the statutes are intended to operate automatically as a "trap" for litigants who fail to include materials as part of the agency record that the agency later claims should have been included. There is, quite properly, a judicial preference for deciding cases on their merits, rather than dismissing them because of some minor or irrelevant technical defect. See *Coslett v. Weddle Bros. Const. Co., Inc.,* 798 N.E.2d 859, 862 (Ind.2003). An overly strict reading of Indiana Code Sections 4–21.5–5–13(a) and 4–21.5–3–33(b) as requiring the filing of an agency record that includes multiple documents not related to the issue presented in the petition for judicial review would not serve public convenience and, in fact, would create hardship and inconvenience.

Here, we conclude that the relevant agency "proceeding" for purposes of those statutes was the July 23, 2003 hearing and the findings, conclusions, and final order resulting from that hearing. Walton and Cedar Creek have not attempted to challenge any previous rulings by the ALJ, and focus only on the resolution of the narrow "cumulative effects" issue. The record submitted by Walton and Cedar Creek contained the document expressing the challenged agency action, i.e. the NRC's final order, in accordance with subsection (a)(1) of Indiana Code Section 4–21.5–5–13. It also contained a complete transcript and all exhibits submitted at the July 23, 2003 hearing, which the ALJ and NRC indicated was the basis for the findings, conclusions, and final order related to the "cumulative effects" issue. This satisfies subsection (a)(2) of Section 4–21.5–5–13, requiring "other documents identified by the agency as having been considered by it before its action and used as a basis for its action...."

As for subsection (a)(3), relating to the ten factors of Indiana Code Section 4–

21.5–3–33(b), DNR and DeKalb do not dispute Walton and Cedar Creek's assertion that there is nothing in NRC's records regarding subsections (b)(5), (6), (7), and (10). Both the final NRC order and the preliminary ALJ order on the "cumulative effects" issue were included, satisfying subsection (b)(9). The transcript and exhibits of the July 23, 2003 hearing satisfied subsections (b)(4) and (8). The parties' objections and responses to the ALJ's preliminary order on the "cumulative effects" issue were included as required by subsection (b)(3). Other motions and intermediate rulings, along with recognition of proper notice and resolution of prehearing orders, are referenced in the NRC's final order. Particularly under the circumstances, where none of the intermediate rulings are being challenged and there is no claim of inadequate notice, this was sufficient to satisfy the requirements of subsections (b)(1), (2), and (3). DNR appears to claim that two letters to DNR from private citizens qualify as "matters placed on the record after an ex parte communication" under subsection (b)(11) that Walton and Cedar Creek improperly failed to include in the record, but we see nothing in the NRC's final order indicating that these letters were ever "placed on the record" or considered by it in connection with the "cumulative effects" issue. In sum, we conclude that the record submitted by Walton and Cedar Creek on November 10, 2004, sufficiently satisfied the requirements of Indiana Code Sections 4–21.5–5–13(a) and 4–21.5–3–33(b).

Of the twenty documents DNR claimed Walton and Cedar Creek improperly excluded from the agency record, eleven were documents filed in support of DNR's summary judgment motion, the ruling on which Walton and Cedar Creek are not challenging. Four of the documents include two letters, an affidavit, and a newspaper article, none of which were mentioned by the ALJ or NRC as being considered on the ruling on the "cumulative effects" issue challenged by Walton and Cedar Creek. One document was the ALJ's September 24, 2002 order denying DNR's motion to dismiss the action for mootness, but a summary of this ruling was included in the NRC's final order, submitted by Walton and Cedar Creek, and again they are not challenging that ruling. Two of the documents were letters to and from the NRC regarding Walton and Cedar Creek's request for preparation of an agency record for judicial review.

We fail to perceive what relevance any of these documents have to the issue presented by Walton and Cedar Creek in their petition for judicial review. They all concern matters outside the record presented and considered by the ALJ and NRC in conjunction with the decision on the "cumulative effects" issue specifically challenged by Walton and Cedar Creek. Neither DNR nor DeKalb County provide any explanation as to why these documents are relevant to that narrow question; their argument boils down to a strict, and in our view, hyper-technical, construction of the statutes governing agency records. We decline to accept such a construction.

The only two documents in DNR's proposed supplemental materials that Walton and Cedar Creek arguably should have included as part of the agency record were the complete docket listing from the NRC since the very beginning of the case, and a stipulation from the parties regarding what was to be addressed at the July 23, 2003 hearing. We have held, however, that Indiana Code Section 4–21.5–5–13(g) can be fairly construed as permitting minor additions or corrections to the record after the time for filing has passed.[3] See

---

3. That subsection of the statute states, "Addi-   tions to the record concerning evidence re-

*Seattle Painting Co., Inc. v. Comm'r of Labor,* 661 N.E.2d 596, 598 (Ind.Ct.App. 1996), *trans. denied.* We believe these two documents fall into that category.

Our conclusion that Walton and Cedar Creek submitted an adequate agency record for purposes of their petition for judicial review is consistent with our holding in *Medical Licensing Board v. Provisor,* 678 N.E.2d 814 (Ind.Ct.App.1997). In that case, the Medical Licensing Board ("the Board") suspended a doctor's license after she was convicted of child molesting. During the course of litigation regarding the suspension, which was stayed by a trial court, her license came up for renewal. The Board refused to renew the license, citing the evidence it had received previously that had led to the suspension of her license. The doctor challenged the non-renewal of her license in a petition for judicial review by a trial court. The trial court granted a stay of the non-renewal of her license, and the Board appealed.

The Board contended, among other things, that the trial court lacked jurisdiction to grant the stay because the doctor had not submitted an adequate agency record as required by Indiana Code Section 4–21.5–5–13. Specifically, the doctor had not timely submitted a transcript of the hearing during which the Board considered whether to renew her license. However, she had submitted a transcript of the hearing that led to the initial suspension of her license. We held that this was an adequate agency record to confer jurisdiction on the trial court to issue a stay of the license non-renewal. *Provisor,* 678 N.E.2d at 818–19. We noted that at the non-renewal hearing, the Board members expressly stated that the non-renewal was based on precisely the same concerns that had led to the initial suspension. *Id.* at 819. We concluded, "Because the trial

court already had the transcript and evidence from the Board's earlier hearing in which it suspended Provisor's license, it had before it all of the evidence which supported the Board's decision not to renew her license." *Id.*

DNR states, *"Provisor* merely determined that a proper record for the particular issue in that case had been filed." Appellee DNR's Br. p. 26. We do not disagree with that statement. However, it can be applied directly to this case. Walton and Cedar Creek filed a proper record for the particular issue in this case, namely whether the NRC erred in its determination regarding the "cumulative effects" issue. The ALJ, and subsequently the NRC, decided that issue on the basis of the evidence and exhibits presented at the hearing held on July 23, 2003. Walton and Cedar Creek submitted a full transcript of that hearing and all exhibits introduced at it. Similar to *Provisor,* we conclude the trial court here had before it all of the evidence which supported NRC's ultimate decision regarding the "cumulative effects" issue through Walton and Cedar Creek's November 10, 2004 filing.

It also appears to us that this case is distinguishable from our decision in *Indiana State Board of Education v. Brownsburg Community School Corporation,* 813 N.E.2d 330 (Ind.Ct.App.2004). There, Brownsburg refused to allow a student to enroll in its school system, and the student then appealed to the State Board of Education ("ISBE"). After conducting a hearing, ISBE ordered Brownsburg to allow the student to enroll. Brownsburg filed a petition for judicial review of this decision. The trial court ordered that ISBE's order be set aside, and ISBE appealed.

ceived under section 12 of this chapter must be made as ordered by the court. The court

may require or permit subsequent corrections or additions to the record."

The dispositive issue we addressed in *Brownsburg* was whether Brownsburg had timely filed an adequate agency record pursuant to Indiana Code Sections 4–21.5–5–13 and 4–21.5–3–33. Brownsburg had timely filed a copy of ISBE's final order, Brownsburg's response to the ALJ's proposed final order, and several documentary exhibits. After the deadline for filing the record passed, Brownsburg received permission to file additional documents, including, apparently, a tape of the ISBE hearing and a memo from the ALJ to the ISBE. We concluded that Brownsburg's timely filing did not constitute an adequate record for the petition for judicial review because it had omitted several documents required under Indiana Code Section 4–21.5–3–33(b). *Brownsburg,* 813 N.E.2d at 334–35.

It appears that Brownsburg's initial timely filing did not include documents or materials that would have been essential to the ISBE's decision, such as evidence or testimony that was presented at the hearing and a memorandum from the ALJ to the ISBE. Walton and Cedar Creek excluded no such materials here with respect to the specific agency decision it was challenging.[4] It also does not appear that in *Brownsburg* there were preliminary rulings by the agency that went unchallenged by the petition for judicial review, unlike in this case. The entire "proceeding" in that case focused on and resolved one issue at one time, namely whether the student could enroll in the Brownsburg school system. Thus, it was more imperative to have a complete "beginning-to-end" administrative record than is the case here, where the petition for judicial review challenges only one of several decisions made by the agency.

To the extent some language in *Brownsburg* might be read as establishing a strict rule that all documents created during the course of an administrative "proceeding" must be made part of the agency record for purposes of judicial review on pain of dismissal, regardless of the relevance of those documents to the question presented to the trial court, we will not apply any such strict rule in this case.

### Conclusion

We conclude the trial court here had both subject matter jurisdiction and jurisdiction over the particular case. The record filed by Walton and Cedar Creek was adequate for the trial court to review the claim made in their petition for judicial review. We reverse the dismissal of the petition and remand for further proceedings consistent with this opinion.

Reversed and remanded.

FRIEDLANDER, J., concurs.

MATHIAS, J., dissents with separate opinion.

MATHIAS, Judge, dissenting.

As I cannot conclude that Walton and Cedar Creek presented "an adequate agency record" for purposes of judicial review under AOPA, I respectfully dissent.

The majority has determined that Walton and Cedar Creek filed the "essential" items for judicial review of the DNR's decision. This determination is unnecessary—the General Assembly has already defined which items are essential for that review in Indiana Code section 4–21.5–3–33.

Indiana Code section 4–21.5–3–33 requires that agencies maintain an official record of each proceeding under Indiana

---

**4.** If, in fact, Walton and Cedar Creek did attempt to challenge any ruling of the NRC aside from its final order regarding the "cu-

mulative effects" issue, it would be appropriate for the trial court to disregard such a challenge.

 

Code 4–21.5–5. Moreover, the agency record consisting of the items enumerated in Indiana Code section 4–21.5–3–33(b) "constitutes the exclusive basis for agency action in proceedings under this chapter and for judicial review of a proceeding under this chapter." Ind.Code § 4–21.5–3–33(c). Finally, Indiana Code section 4–21.5–5–13(a) requires a petitioner to transmit to the court "the original or a certified copy of the agency record[,]" not merely those portions of the record which the petitioner deems relevant.

I respectfully disagree with the majority's conclusion that this case is distinguishable from *Indiana State Board of Education v. Brownsburg Community School Corporation,* 813 N.E.2d 330 (Ind.Ct.App. 2004). That opinion did nothing more or less than apply the clear language contained in the statutes governing judicial review of agency action. I do not believe that doing so constitutes an "overly strict reading," nor do I believe that the requirement of filing a complete agency record presents a trap or technicality.

"[W]here a narrow statutory remedy is given, the time and manner of asserting such right must be strictly followed[.]" *Shipshewana Convenience Corp. v. Bd. of Zoning Appeals of LaGrange County,* 656 N.E.2d 812, 814 (Ind.1995). This court has held that the timely filing of the agency record is a condition precedent to a court acquiring jurisdiction to consider a petition for judicial review. See *Brownsburg,* 813 N.E.2d at 333; *Clendening v. Ind. Family & Soc. Servs. Admin.,* 715 N.E.2d 903, 904 (Ind.Ct.App.1999); *Park v. Med. Licensing Bd. of Ind.,* 656 N.E.2d 1176, 1179 (Ind.Ct.App.1995), *trans. denied.* Likewise, I believe the filing of the agency record must be complete, as required by Indiana Code section 4–21.5–5–13, in order for a court to acquire jurisdiction.

For all of these reasons, I would affirm the trial court's dismissal of the petition for judicial review.